13-6878

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Respondent,*

v.

MADISON DUANE MCRAE,

*Petitioner.*

ON REVIEW FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE
(3:04-CR-00223-RJC-DCK-2; 3:08-CV-00219-RJC)

## BRIEF FOR PETITIONER

ROBERT L. LITTLEHALE
  *Counsel of Record*
WILLIAM BLAISE WARREN
MOLISSA H. FARBER
DIANA V. VALDIVIA
NATHANIEL D. CULLERTON
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7319

ALEXANDRA R. CLARK
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3227

*Counsel for Petitioner*

Contents

**Page**

JURISDICTION ...............................................................1

ISSUE PRESENTED .......................................................2

STATEMENT OF THE CASE ........................................3

SUMMARY OF ARGUMENT .........................................7

STANDARD OF REVIEW...............................................10

ARGUMENT ...................................................................10

I.   The Court May Determine, Without a COA, Whether a District Court Erred in Classifying a *Pro Se* Rule 60(b) Motion...........10

   A.   *Reid*'s Self-Described "Incongruous" Approach .................15

   B.   The Supreme Court, in *Gonzalez*, Disavowed *Reid*'s Methodology ..............................................................17

   C.   A Published Opinion Is Needed to Clarify that *Gonzalez* Nullified *Reid*'s Precedential Force............................................20

II.  The District Court Erred by Treating McRae's "Mixed" Motion as a Successive § 2255 Petition .................................................22

III. McRae's "Mixed" Motion Must Be Considered by the District Court in the First Instance.........................................................35

IV.  *En Banc* Review May Be Needed to Resolve Whether *Reid*'s "Incongruous" Approach Was Truly Intended by Congress Under §§ 2553(c) & 2555(h).........................................................38

   A.   *Reid* Is an Advisory Opinion ...............................................39

i

B. *Reid* Undermined the Intent of Congress by Conflating the Requirements of §§ 2253(c) & 2255(h) ...................................41

C. *Reid* Upturned Decades of Case Law by Elevating the Form of a *Pro Se* Filing Over the Filing's Substance ...............43

REQUEST FOR ORAL ARGUMENT...........................................43

CONCLUSION ...........................................................................45

RULE 32(A)(7) COMPLIANCE ...................................................46

CERTIFICATE OF SERVICE......................................................46

CERTIFICATE OF CONFIDENTIALITY.....................................47

CITED AUTHORITIES

Page(s)

CASES

*Beaudett v. City of Hampton*,
775 F.2d 1274 (4th Cir. 1985)..............................18

*Bone v. Polk*,
441 F. App'x 193 (4th Cir. 2011) ........................30

*Darr v. Burford*,
339 U.S. 200 (1950), *overruled on other
grounds by Fay v. Noia*, 372 U.S. 391 (1963) ....................18

*Egan v. Conrad*,
440 F. App'x. 221 (4th Cir. 2011) ........................20

*Gonzalez v. Crosby*,
545 U.S. 524 (2005)................................... *passim*

*Gordon v. Leeke*,
574 F.2d 1147 (4th Cir. 1978)..............................18

*Hohn v. United States*,
524 U.S. 236 (1998)..............................40, 41

*In re Williams*,
444 F.3d 233 (4th Cir. 2006)......................9, 24, 36

*Jones v. Braxton*,
392 F.3d 683 (4th Cir. 2004).....................14, 39, 41

*Kimmelman v. Morrison*,
477 U.S. 365 (1986).................................30

*Leimbach v. Allen*,
976 F.2d 912 (4th Cir. 1992)..............................40

iii

*Lonchar v. Thomas,*
    517 U.S. 314 (1996) ...................................................................... 37

*Plains Commerce Bank v. Long Family Land & Cattle Co.,*
    554 U.S. 316 (2008) ...................................................................... 39

*Reid v. Angelone,*
    369 F.3d 363 (4th Cir. 2004) ..................................................... *passim*

*Sas v. Maryland,*
    334 F.2d 506 (4th Cir. 1964) ......................................................... 15

*Slack v. McDaniel,*
    529 U.S. 473 (2000) ...................................................................... 11

*Spitznas v. Boone,*
    464 F.3d 1213 (10th Cir. 2006) .............................................. 8, 41, 42

*United States ex re. Brown v. Fogel,*
    395 F.2d 291 (4th Cir. 1968) ......................................................... 18

*United States v. Barber,*
    519 F. App'x. 208 (4th Cir. 2013) ................................................. 20

*United States v. Brown,*
    280 F. App'x. 286 (4th Cir. 2008) ................................................. 21

*United States v. Everette,*
    512 F. App'x 295 (4th Cir. 2013) .................................................. 16

*United States v. Gibson,*
    459 F. App'x 283 (4th Cir. 2011) .................................................. 21

*United States v. Hill,*
  418 F. App'x. 217 (4th Cir. 2011) ...................................................... 24

*United States v. Leon-Sanchez,*
  332 F. App'x. 79 (4th Cir. 2009) ...................................................... 21

*United States v. MacDonald,*
  641 F.3d 596 (4th Cir. 2011).............................................................. 10

*United States v. McLean,*
  412 F. App'x 643 (4th Cir. 2011) ...................................................... 20

*United States v. McRae,*
  235 F. App'x 968 (4th Cir. 2007) .................................................... 3, 4

*United States v. McRae,*
  450 F. App'x 284 (4th Cir. 2011) ........................................................ 5

*United States v. Mouzon,*
  354 F. App'x. 739 (4th Cir. 2009) .................................................... 20

*United States v. Pyne,*
  423 F. App'x 303 (4th Cir. 2011) ...................................................... 20

*United States v. Shakoor,*
  533 F. App'x. 317 (4th Cir. 2013) .................................................... 20

*United States v. Sprague,*
  467 F. App'x 205 (4th Cir. 2012) ...................................................... 16

*United States v. Winestock,*
  340 F.3d 200 (4th Cir. 2003)...................................................... *passim*

*United States v. Woods,*
  446 F. App'x. 581 (4th Cir. 2011) .................................................... 20

STATUTES, GUIDELINES, AND RULES

21 U.S.C. § 841(a)(1)............................................................................ 3

21 U.S.C. § 846.................................................................................... 3

21 U.S.C. § 952(a) ........................................................................... 3

21 U.S.C. § 963 ................................................................................ 3

28 U.S.C. § 1291 .............................................................................. 2

28 U.S.C. § 2244(b) ............................................................... *passim*

28 U.S.C. § 2253 .................................................................... *passim*

28 U.S.C. § 2254 .................................................................... *passim*

28 U.S.C. § 2255 .................................................................... *passim*

The Antiterrorism and Effective Death Penalty Act of 1996,
    Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") .............................. 17

Fed. R. Civ. P. 60(b) ............................................................. *passim*

## OTHER AUTHORITIES

Brief for Appellant at 4-8, *United States v. McRae*,
    235 F. App'x 968 (4th Cir. 2007) (No. 06-4606),
    2006 WL 2781489 ........................................................................ 3

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 13-6878

UNITED STATES OF AMERICA,

*v.*

MADISON DUANE MCRAE

———————

*On Review from*
*The United States District Court*
*for the Western District of North Carolina*
*at Charlotte*

———————

## BRIEF FOR PETITIONER

———————

## JURISDICTION

Following the District Court's denial of his 28 U.S.C. § 2255 petition, Madison Duane McRae filed a *pro se* Fed. R. Civ. P. 60(b) motion for relief from judgment on September 7, 2012. Joint Appendix ("JA") 710. On the twentieth of November that same year, McRae submitted a "Motion for Entry of Default." 08-CV-219-RJC, Dkt # 50. The District Court, construing McRae's motions as one "second or successive" motion pursuant to 28 U.S.C. § 2255, dismissed the motions for lack of subject-matter jurisdiction on April 29, 2013. JA 752-53. The District Court further declined to issue a certificate of appealability. On May 17, 2013, McRae filed a timely motion for a

certificate of appealability, which the Court construed as a notice of appeal. JA 755. This Court has jurisdiction under 28 U.S.C. §§ 1291, 2553(c), & 2255(h).

## ISSUE PRESENTED

In the collateral-review context, a Rule 60(b) motion seeks to remedy some defect in the collateral-review proceedings, while a "second or successive" § 2255 petition attacks the underlying conviction or sentence. *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003). The Supreme Court, *see Gonzalez v. Crosby*, 545 U.S. 524 (2005), and Congress, *compare* 28 U.S.C. § 2253(c) (which governs 60(b) appeals) *with* 28 U.S.C. § 2255(h) (addressing successive § 2255 claims), require courts to treat 60(b) and § 2255 claims differently. Pursuant to § 2253(c), an *appellant* requires a certificate of appealability ("COA") to appeal the district court's denial of his 60(b) petition. But under § 2255(h), a *petitioner* does not need to seek a COA, but rather must seek permission from this Court to file a successive § 2255 petition in the district court. Accordingly, district courts must examine *pro se* 60(b) motions to determine whether to treat them as 60(b) motions or § 2255 petitions. *Winestock*, 340 F.3d at 207; *Gonzalez*, 545 U.S. at 529-32

2

(applying same rubric in the context of a habeas corpus proceeding under 28 U.S.C. § 2254).

The issue presented by this case is whether the Court must issue a COA to determine whether a district court properly construed a motion labeled "Rule 60(b)," so that it may know which standard—§§ 2253(c) or 2255(h)—governs the dispute.

## STATEMENT OF THE CASE

After a three-day trial in the United States District Court for the Western District of North Carolina, a jury convicted Madison Duane McRae of four drug-related charges on September 14, 2005.[1]   JA 658. The following spring, the Honorable Robert J. Conrad conducted a sentencing hearing, and on May 25 sentenced McRae to 210 months' imprisonment for each of the four charges, to run concurrently.  JA 667.

---

[1]   McRae's convictions include conspiracy to possess with intent to distribute cocaine and ecstasy, in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1); conspiracy to import cocaine and ecstasy into the United States, in violation of 21 U.S.C. § 963; and unlawful importation of cocaine into the customs territory of the United States and aiding and abetting, in violation of 21 U.S.C. § 952(a). *See United States v. McRae*, 235 F. App'x 968 (4th Cir. 2007) (per curiam).  The facts related to these convictions are set forth in McRae's Opening Brief on direct appeal, Brief for Appellant at 4-8, *United States v. McRae*, 235 F. App'x 968 (4th Cir. 2007) (No. 06-4606),   2006 WL 2781489.

3

Following an unsuccessful direct appeal, *United States v. McRae*, 235 F. App'x 968 (4th Cir. 2007) (per curiam), McRae began the collateral-review process in District Court on May 12, 2008, petitioning under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  JA 672.  Among other things, McRae asserted claims based on ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct.  *Id.*

On October 8, 2008, the Government filed its response to McRae's § 2255 petition.  08-CV-219-RJC, Dkt #18.  That submission, the District Court found, did not take into account the memorandum McRae filed in support of his petition.  *Id.*, Dkt #26.  Because, contrary to the Government's suggestion, McRae's memorandum "include[d] factual and legal support for [McRae's] claims," the District Court asked the Government to file a supplemental response to McRae's petition and to address therein all claims listed in the motion and "explained" in the memorandum in support.  *Id.* at 2.

The Government, on July 19, 2010, filed its supplemental response.  *Id.*, Dkt #32.  McRae filed a reply brief.  *Id.*, Dkt #34.  And on March 15, 2011, almost three years after McRae filed his § 2255

4

petition, the District Court granted the Government's motion for summary judgment, without holding an evidentiary hearing.  JA 693.

McRae filed a notice of appeal from the District Court's denial of his § 2255 petition on March 28, 2011.  08-CV-219-RJC, Dkt #41.  On October 17, 2011, this Court issued an unpublished, per curiam opinion finding the denial of McRae's petition under § 2255 not appealable absent a COA under 28 U.S.C. § 2253(c)(1)(B).  *United States v. McRae*, 450 F. App'x 284 (4th Cir. 2011).  The Court further declined to issue such a COA.  Unsuccessful petitions for rehearing, for rehearing *en banc*, and for writ of certiorari followed.

McRae, *pro se*, returned to District Court on September 7, 2012, filing a motion entitled Motion for Relief from Judgment 60(b)(1)(3)(6).  JA 710.  That motion and the District Court's treatment thereof form the bases of these proceedings.

McRae's 60(b) motion highlighted five mistakes the District Court made during § 2255 proceedings.[2]  Collectively, McRae argued, the District Court's errors "caused a serious defect in the collateral review

---

[2]  Because we take up each in detail, below, we do not recount them here.  *See* § II.

5

process and [denied McRae] his right of Due Process and of a fair opportunity at relief." JA 715.

The District Court did not examine any of McRae's claims. Instead, in the "Background" section of its April 29, 2013 order dismissing McRae's 60(b) motion for lack of subject-matter jurisdiction, JA 752, the District Court stated only that:

> In the instant motion, Petitioner attacks the Court's decision to dismiss his § 2255 action. Thus, the Rule 60(b) motion is simply a successive § 2255 motion attacking the criminal Judgment by which he is incarcerated. United States v. Winestock, 340 F.3d 200, 206-07 (4th Cir. 2003). Therefore, this Court is without jurisdiction to entertain the merits without authorization from the Fourth Circuit.

JA 753. The District Court further declined to issue a COA. JA 754.

Following McRae's timely notice of appeal, the Court appointed undersigned counsel to brief the question "[w]hether, in light of *Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004), and *Gonzalez v. Crosby*, 545 U.S. 524 (2005), McRae's appeal of the district court's dismissal of his Rule 60(b) motion as an unauthorized successive § 2255 motion is subject to the certificate of appealability requirement."

As explained presently, the answer to that query is *no*.

6

## SUMMARY OF ARGUMENT

**I.**      Rule 60(b) motions and successive § 2255 petitions proceed through the federal courts on different paths.

Rule 60(b) motions for relief from final judgment following the denial of a prisoner's first § 2255 petition attack some defect in the *collateral-review process*. *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003). A prisoner asserts a 60(b) motion when, for example, he claims that government agents perpetrated a fraud on the court during the prisoner's collateral-review proceedings. *Id.* The district court retains jurisdiction to hear 60(b) motions, and a 60(b) motion arrives in this Court on appeal from the judgment of a district court. Before this Court may take up the merits of a 60(b) appeal, however, a certificate of appealability must issue. *Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004).

When it comes to second or successive § 2255 petitions, which attack a prisoner's *underlying conviction or sentence*, *Winestock*, 340 F.3d at 205, this Court gets the first bite of the apple—it decides, pursuant to 28 U.S.C. § 2255(h), whether to grant permission for the petitioner to proceed before the district court. Absent authorization

7

from this Court, district courts lack jurisdiction to hear a petitioner's second or successive § 2255 claim. 28 U.S.C. § 2255(h). Thus, a motion seeking permission to file a successive § 2255 is not "an appeal," and the COA requirement of § 2253(c)—which governs "appeal[s]"—does not apply. *Spitznas v. Boone*, 464 F.3d 1213, 1218 (10th Cir. 2006).

This case presents the recurring problem of what happens in the gray area between those two scenarios, where a prisoner mislabels, or a district court misconstrues, a 60(b) motion as a successive § 2255 petition (or *vice versa*). The answer given by the Supreme Court in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), reflects the classic model of construction for *pro se* filings: regardless of a filing's label, a court must look to the filing's substance before adjudicating it. In *Gonzalez*, the Supreme Court explained that, in evaluating 60(b) filings, a court must treat true 60(b) claims as it would 60(b) motions, and any habeas claim as it does successive habeas petitions. *Gonzalez*, 545 U.S. at 530. And because, by statute, only appeals of Rule 60(b) motions (and not petitions seeking permission to file a successive § 2255 motion) require a COA, this Court need not ask whether a COA should issue before

8

determining *whether* the district court properly construed a *pro se* petition as a 60(b) motion or successive § 2255 petition.

**II.** McRae's petition attacks both his conviction *and* the collateral-review process. For that reason, McRae's petition constitutes a so-called "mixed" 60(b) and successive § 2255 filing. *Winestock,* 340 F.3d at 207. In such mixed circumstances, the District Court is required to afford the petitioner an opportunity to elect between deleting the improper second or successive claims—and proceeding on the Rule 60(b) claims alone—or having the entire motion treated as a second or successive application. *Id.*

**III.** Precedent requires the panel, in this circumstance, to vacate the District Court's order dismissing McRae's filing for lack of jurisdiction and to remand this case for further proceedings so that the District Court can, in the first instance, treat accordingly those portions that reflect a true 60(b) motion and those portions that reflect a second or successive § 2255 motion. *Id. See also In re Williams*, 444 F.3d 233, 237 (4th Cir. 2006); *Reid*, 369 F.3d at 374-75.

**IV.** This Court's cases take conflicting approaches in analyzing *pro se* 60(b) motions. In some cases, the Court follows *Gonzalez* by

treating 60(b) and § 2255 filings differently.  Yet in others, the Court follows the analysis provided in its pre-*Gonzalez* decision of *Reid v. Angelone*—a decision which the Court itself recognized "may appear incongruous" given the statutory scheme.  369 F.3d at 374 n.7.

Because there exists interpanel disagreement over the issue, were the panel to find that the *Reid* methodology survived *Gonzalez*, *en banc* consideration would be necessary to secure uniformity of the Court's decisions and to resolve whether Congress, under §§ 2553(c) and 2555(h), truly intended the approach utilized in *Reid*.

## STANDARD OF REVIEW

"[O]ur review is de novo where a district court construes a motion as a successive § 2255 motion and dismisses it for failure to obtain prefiling authorization from a court of appeals."  *United States v. MacDonald*, 641 F.3d 596, 609 (4th Cir. 2011).

## ARGUMENT

## I.   The Court May Determine, Without a COA, Whether a District Court Erred in Classifying a *Pro Se* Rule 60(b) Motion

Certiorari and common-law writs aside, a prisoner displeased with the resolution of his § 2255 petition has two options.  He might file a

60(b) claim challenging the integrity of those proceedings. Or he could submit a successive § 2255 petition.

If the prisoner chooses to file a motion under 60(b), he must do so before a district court. But a prisoner must have in hand a COA to appeal the merits of a district court's decision. *Reid v. Angelone*, 369 F.3d 363, 369-70 (4th Cir. 2004). This Court grants a COA in a 60(b) case only where a prisoner makes "a substantial showing of the denial of a constitutional right."[3] 28 U.S.C. § 2253(c)(2).

Second or successive § 2255 petitioners, on the other hand, must begin not by filing a motion in district court, but by seeking authorization to pursue the claim before a court of appeals. 28 U.S.C. § 2255(h). This Court grants permission to pursue a second or successive § 2255 only where a prisoner brings claims based on a new rule of constitutional law or new evidence.[4] *Id.*

---

[3] A prisoner appealing a decision on the merits does so by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), while a prisoner appealing a procedural ruling must show both that the dispositive procedural ruling is debatable, and that the motion states a debatable claim of the denial of a constitutional right. *Id.* at 484-85.

[4] A successive petition, therefore, "requires a more convincing factual showing than does [a motion under] Rule 60(b)." *Gonzalez v. Crosby*,

At least that's the way things are supposed to work. Sometimes, however, *pro se* prisoners mislabel their petitions. And other times prisoners file both true 60(b) claims—attacking a defect in the collateral-review proceedings—and second or successive § 2255 claims—attacking the underlying conviction or sentence—in the same motion.[5] Accordingly, district courts must examine *pro se* filings to ascertain whether they are in fact true 60(b) filings, or whether they "are tantamount to successive [§ 2255] applications." *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003).

When the filing is a "true" 60(b) motion, the district court must resolve it. Where it is an unauthorized second or successive § 2255 petition, the district court does not have jurisdiction. And if the filing contains both true 60(b) and second or successive § 2255 claims, the district court must give the prisoner an "opportunity to elect between

---

545 U.S. 524, 531 (2005) (referencing the requirements of § 2244(b)(2)(B) petitions).

[5] These hybrid filings have been referred to as a "new breed of mixed" 60(b) and § 2255 petition, and raise at least one 60(b) claim and at least one successive § 2255 claim. *United States v. Winestock*, 340 F.3d at 205 (4th Cir. 2003) (quotation omitted). A mixed motion does not constitute a separate avenue for relief, however, as ultimately the 60(b) and § 2255 claims in a mixed motion must be evaluated under separate 60(b) and § 2255 standards. *See generally*, *Gonzalez*, 545 U.S. at 527-36.

12

deleting the improper claims or having the entire motion treated as a successive application." *Id.*

But what happens when a prisoner contends that the district court wrongfully construed his petition? Must this Court, for instance, grant a COA before considering whether a district court mistakenly viewed a successive § 2255 petition as a 60(b) motion; or grant permission to proceed before determining whether a district court erred in treating a 60(b) motion as a successive § 2255 petition? Common sense dictates that this Court must first ascertain what type of claim a prisoner raises—one under 60(b) or a successive § 2255—before it can decide under § 2253(c) whether a COA should issue in a 60(b) case, or pursuant to § 2255(h) whether a petitioner is worthy of permission to proceed in a § 2255 one.

The Supreme Court, in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), embraced this common-sense approach. In the Court's view, "failing to subject" a filing to the proper statutorily defined requirements "would be 'inconsistent with'" the relevant law. *Id.* at 531. For that reason, where a filing is "labeled a Rule 60(b) motion, [but] is in substance a successive habeas petition, [it] should be treated accordingly." *Id.*

13

Likewise, when a filing labeled 60(b) is in fact a "true" 60(b) motion, it is not subject to the restrictions governing successive habeas petitions. *Id.*

*Gonzalez* should have marked a dramatic departure from how *pro se* 60(b) filings had proceeded before the Fourth Circuit.  For as described below, this Court, in the pre-*Gonzalez* case of *Reid v. Angelone*, 369 F.3d 363 (4th Cir. 2004), treated a successive habeas petitioner not like it must under the relevant authorization statute, (there § 2244(b)), but instead in the same way it treats 60(b) movants under § 2253(c).[6]  But while many of this Court's non-argued, unpublished opinions correctly follow *Gonzalez* by treating § 2255 and

---

[6] Other cases, many of which are referenced below, similarly conflate the analysis required under the relevant authorization statute, here § 2255(h), and the COA statute, § 2253(c).  We briefly note one such case, *Jones v. Braxton*, 392 F.3d 683 (4th Cir. 2004).  While *Jones*'s fate is sealed by its deep reliance on *Reid*, it is also distinguishable from the present case. Among other things, unlike Jones, McRae does not appeal the *merits* of the District Court's denial of his claim. Moreover, we do not contest that properly construed and handled *pro se* filings may ultimately be subject to a COA requirement.  In any event, given that *Jones* viewed as "absurd[]" the Supreme Court's subsequent conclusion that a single *pro se* filing can constitute separate claims, 392 F.3d at 690-91, *Jones* is no longer good law.

14

60(b) claims differently under §§ 2255(h) and 2253(c), others continue to follow the discredited approach utilized in *Reid*.[7]

This case presents an opportunity for the Court not only to clarify that the Supreme Court's decision in *Gonzalez* abrogated *Reid*'s methodology, but also to remind district courts that, just as they would with any *pro se* filing, they must construe *pro se* 60(b) filings liberally, looking to the substance of the motion, rather than the label a petitioner affixes to the motion's cover page. *See, e.g.*, *Sas v. Maryland*, 334 F.2d 506, 517 (4th Cir. 1964).

## A. *Reid*'s Self-Described "Incongruous" Approach

In *Reid*, a panel of this Court considered whether a petitioner "must obtain a certificate of appealability as a prerequisite to our consideration" of her motion for "reconsideration of an order denying her application for habeas corpus relief." 369 F.3d at 366. After

---

[7] While *Gonzalez* and *Reid* concerned the successive habeas authorization statute relevant to state prisoners, 28 U.S.C. § 2244(b), the reasoning employed therein applies equally to claims under the federal authorization statute, § 2255(h). That is not to say, however, that there might not be a set of circumstances in which the application of these two related but distinct statutes might differ in the 60(b) context. For instance, § 2555 proceedings do not involve the same federalism and comity concerns as those under § 2254, and there may be a reason to allow a § 2255 petitioner more leeway in establishing his claim.

engaging in a statutory analysis of § 2253(c), the Court concluded that "requiring a COA for an appeal from a Rule 60(b) motion is necessary to achieve the congressional purposes underlying § 2253."[8]  *Id.* at 370.

This conclusion, the Court recognized, was reached only through its "accept[ance of] some incongruity."  *Id.* at 374 n.7.  For the Court evaluated whether Reid was entitled to a COA to appeal "her Rule 60(b) motion," *id.* at 371, even though later it found that her motion was not a Rule 60(b) motion at all.  Instead, the Court concluded, Reid's was "a successive habeas application, over which the district court had no jurisdiction."  *Id.* at 375.

---

[8]  The Court in *Winestock* similarly noted that it had issued a COA in a case involving a successive § 2255 petition.  The Supreme Court's reasoning in *Gonzalez*, discussed below, impacted that determination in the same way as it did *Reid* (and its progeny).  In addition, several unpublished opinions have taken up a COA inquiry as part of an alternative holding.  For instance, in cases like *United States v. Everette*, 512 F. App'x 295 (4th Cir. 2013) (per curiam) and *United States v. Sprague*, 467 F. App'x 205 (4th Cir. 2012) (per curiam), the Court insulated its decision by evaluating the petition under both the §§ 2253(c) and 2255(h) benchmarks.  This was likely overkill.  Under *Gonzalez*, a claim is either one under 60(b) or § 2255; it cannot be both.  Where a petitioner seeks to assert a combination of 60(b) and § 2255 claims in one petition, moreover, this Court does not undertake a merits inquiry in the first instance.  In those circumstances, the Court remands the case for further consideration before the district court.  *See Reid*, 369 F.3d at 366; *Winestock*, 340 F.3d at 202.

In other words, even though Reid's "appeal" was not an appeal of a 60(b) motion under § 2253(c), but rather a motion for permission to file a successive § 2254 petition under § 2244(b), the Court nevertheless held that she had to satisfy the COA requirement of § 2253(c).

The reasoning employed in *Reid*, we submit, lacks a statutory basis.[9] And as explained presently, the ensuing opinion in *Gonzalez* rendered *Reid*'s line of reasoning irreconcilable with Supreme Court habeas jurisprudence.

## B. The Supreme Court, in *Gonzalez*, Disavowed *Reid*'s Methodology

The year after this Court issued *Reid*, the Supreme Court confronted the question whether 60(b) motions in habeas cases "are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under [AEDPA]." *Gonzalez*, 545 U.S. at 526. In answering this question, the Supreme Court announced a simple rule: no matter the label a prisoner places on a filing, claims raising

---

[9] By collapsing the requirements of the habeas authorization statute into § 2253(c), the panel in *Reid* erected a COA barrier before successive § 2255 applicants not envisioned by Congress and claimed a law-making role denied to it by the Constitution. Respecting the strength of the Fourth Circuit's rule of interpanel accord, however, we preserve for further review the reasons why this is so. *See* § IV, below.

true 60(b) issues are to be treated like 60(b) claims, and those averring successive habeas issues are to be treated like successive habeas claims. Courts are "correct," the Supreme Court explained, to treat what is in substance a habeas claim as they would a habeas filing, even if the filing is denominated 60(b). *Id.* at 531.

The Supreme Court's holding in *Gonzalez*, of course, is little more than a modern recitation of how courts have been evaluating *pro se* filings for generations.[10]  It is the substance of a *pro se* motion, not its label, that governs.  The first step of any court's analysis, therefore, is to determine *what a prisoner's claim is.*[11]  *See generally Gonzalez*, 545 U.S. at 530-33.

---

[10] *See, e.g., Darr v. Burford*, 339 U.S. 200, 203-04 (1950), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391 (1963) ("To make [the] protection [of the writ of habeas corpus] effective for unlettered prisoners without friends or funds, federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief.").

[11] This Court has expressed "the indisputable desire that [*pro se*] litigants with meritorious claims should not be tripped up in court on technical niceties." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).  Accordingly, when confronted with the filing of a *pro se* litigant, courts are "required to determine the scope to give to his allegation, recognizing the liberality with which pleadings pro se must be construed." *United States ex rel. Brown v. Fogel*, 395 F.2d 291, 295 (4th Cir. 1968).  *See also Gordon v. Leeke*, 574 F.2d

But this is the exact opposite of the panel's approach in *Reid*. That panel did not first ascertain what type of motion sat before it. Nor did it determine that Reid's motion was a successive habeas claim and treat it accordingly, by asking whether or not Reid should have been granted authorization to pursue successive habeas relief. On the contrary, the panel treated what it ultimately determined to be a "successive habeas application" as it would a 60(b) motion, asking whether the petition entitled Reid to a COA pursuant to § 2253(c).

In so doing, the panel in *Reid* not only ignored the substance of a *pro se* filing, but it also conflated the distinct procedures outlined by Congress in §§ 2253(c) and 2244(b)—all because of the District Court's misinterpretation of Reid's motion.

The *Gonzalez* Court rejected that approach. As the Supreme Court explained, "there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application" when no habeas "claim" is presented. 545 U.S. at 533. Correspondingly, there is no reason for a court to treat what it determines to be a successive § 2255 claim as a 60(b) motion. Because the *Reid* panel "fail[ed] to

---

1147, 1152-53 (4th Cir. 1978) (discussing additional actions required of district courts in *pro se* cases).

subject" Reid's claim to the proper statutory requirements, that decision is "inconsistent with" relevant law. *Id.* at 531. *Reid*'s methodology, which looks to the issuance of a COA before evaluating whether the COA requirements of § 2253(c) would even apply, cannot stand.

### C. A Published Opinion Is Needed to Clarify that *Gonzalez* Nullified *Reid*'s Precedential Force

Nine years after *Gonzalez*, there remains confusion over the continuing viability of *Reid*. Some of this Court's cases correctly track *Gonzalez*.[12] Others follow *Reid*.[13] This Court's guidance is needed to bring uniformity to this important issue.

In many cases, such as *Egan v. Conrad*, the Court follows *Gonzalez* in treating 60(b) motions and habeas petitions differently.[14]

---

[12] *See, e.g.*, *United States v. Shakoor*, 533 F. App'x 317, 317 n.* (4th Cir. 2013) (per curiam) (making the threshold determination that habeas petitioner's 60(b) motion, denied by the district court, was "not a second or successive § 2255 motion" before requiring COA); *United States v. Woods*, 446 F. App'x 581, 581 n.* (4th Cir. 2011) (per curiam) (same).

[13] *See, e.g.*, *United States v. Pyne*, 423 F. App'x 303, 304 (4th Cir. 2011) (per curiam) (citing *Reid* for the incorrect proposition that an unauthorized § 2255 petition is appealable only if a COA issues); *United States v. McLean*, 412 F. App'x 643, 643-44 (4th Cir. 2011) (per curiam) (same); *United States v. Mouzon*, 354 F. App'x 739, 740 (4th Cir. 2009) (per curiam) (same).

[14] *See also United States v. Barber*, 519 F. App'x 208, 208 n.* (4th Cir. 2013) (per curiam) (finding that "to the extent [petitioner] alleged a

440 F. App'x 221 (4th Cir. 2011) (per curiam). There, the Court determined, before issuing a COA, that the district court erred in construing the Rule 60(b) motion as a successive habeas petition. *Id.* at 222. This was so because the filing "did not directly attack Egan's conviction or sentence, but rather asserted a defect in the collateral review process." *Id.* It was only after determining that a Rule 60(b) sat before it that the Court considered whether Egan was entitled to a COA. *Id.*

In direct contrast sit cases like *United States v. Gibson*, which continue to follow *Reid*. 459 F. App'x 283 (4th Cir. 2011) (per curiam). In *Gibson*, the Court cited *Reid* for the proposition that where a 60(b) filing is actually "a successive and unauthorized § 2255 motion, see 28 U.S.C. § 2255(h) … the order is not appealable unless a circuit justice or

---

defect in the collateral review process, and his motion constituted a true Rule 60(b) motion, we conclude the district court properly denied relief") (citation omitted); *United States v. Leon-Sanchez*, 332 F. App'x 79, at *1 n.* (4th Cir. 2009) (per curiam) (noting that "the motion was a proper Rule 60(b) motion, not a second or successive § 2255 motion" before taking up COA issue); *United States v. Brown*, 280 F. App'x 286, 287 (4th Cir. 2008) (per curiam) (denying habeas petitioner COA to appeal denial of a 60(b) motion after determining without first granting a COA that "the motion was a proper Rule 60(b) motion, not a second or successive § 2255 motion," in agreement with the district court).

judge issues a certificate of appealability." *Id.* at *1. This reasoning, however, finds support neither in that statute nor in *Gonzalez*.[15]

We respectfully submit that the Court should reaffirm its commitment to *Gonzalez* and the statutory text, and to jettison the *Reid* methodology, which for a decade has wrongfully forced panels to consider whether a COA is warranted under § 2253(c) without knowing whether § 2253(c) or § 2255(h) ultimately governs.

## II. The District Court Erred by Treating McRae's "Mixed" Motion as a Successive § 2255 Petition

The question remains whether the District Court correctly construed McRae's 60(b) motion as a successive § 2255 petition. It did not. Accordingly, the decision below should be vacated and this case remanded so that the District Court can properly consider, in the first instance, what sorts of claims McRae actually made in his *pro se* filing.

---

[15] Quite the opposite. The Supreme Court in *Gonzalez* explained that the "absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties." 545 U.S. at 534. Accordingly, because district courts lack jurisdiction over unauthorized successive habeas petitions, there was simply no motion for Reid or Gibson to "appeal."

**A**

McRae advanced five claims in his 60(b) filing.  The District Court dismissed the filing for want of jurisdiction, essentially viewing the whole lot as a "successive [§ 2255] application in 60(b) clothing." *Winestock*, 340 F.3d at 207 (citation omitted).  As the District Court stated:

> In the instant motion, Petitioner attacks the Court's decision to dismiss his §2255 action. Thus, the Rule 60(b) motion is simply a successive §2255 motion attacking the criminal Judgment by which he is incarcerated. Therefore, this Court is without jurisdiction to entertain the merits without authorization from the Fourth Circuit.

JA 753 (citing *Winestock*, 340 F.3d at 206-07).  These three short sentences betray a fundamental misinterpretation of *Winestock*.  Due to this misunderstanding, the District Court erroneously treated McRae's five grounds for relief as one successive § 2255 petition, rather than considering individually whether any of the issues constituted a true 60(b) claim.

*Winestock* requires that, generally speaking, the difference between a 60(b) claim and a successive § 2255 claim is that a 60(b) claim attacks a defect in the *collateral-review process*, while a

23

successive § 2255 claim attacks the *underlying conviction or sentence*. 340 F.3d at 207. While the Supreme Court abrogated the portions of *Winestock* speaking to the COA requirement, the remainder of this Court's analysis remains good law. *See, e.g.*, *In re Williams*, 444 F.3d 233, 237 (4th Cir. 2006) (explaining, post-*Gonzalez*, that "the district court is bound, under *Winestock*, to provide Williams with the option of omitting the repetitive claims or having the entire petition treated as second or successive"); *c.f. United States v. Hill*, 418 F. App'x. 217, 218-19 (4th Cir. 2011) (per curiam) (dismissing petitioner's unauthorized § 2255 claims and separately considering the petitioner's Rule 60(b) claims).[16]

---

[16] *Hill*, a non-precedential opinion, conflicts with a prior published ruling of this Court holding that remand is the "proper" remedy when the district court has failed in the first instance to properly categorize mixed Rule 60(b) and § 2255 petitions. *E.g.*, *Reid*, 369 F.3d at 375 ("The proper remedy, however, is not dismissal; instead, Reid must be given an opportunity to elect between deleting the improper claims or having the entire motion treated as a successive application") (internal quotation marks omitted). Moreover, *Hill* is distinguishable from this case. In *Hill*, the petitioner's 60(b) claims were procedurally barred, as they were filed "well beyond the authorized one-year period." *Hill*, 418 F. App'x at 219. In ruling on Hill's 60(b) claims without remanding to the district court, the Court found it determinative that "application of an alternative procedural ground renders Hill's appeal futile." *Id.* No such alternative procedural grounds exist here.

Claims directed at some defect in the § 2255 proceedings are not, as the District Court found, successive § 2255 claims. Rather, *Winestock* requires that such a claim should "be deemed a proper [60(b)] motion to reconsider." 340 F.3d at 207.

A brief assessment of McRae's claims reveals the District Court's misunderstanding.

1

McRae first argues that, in denying his ineffective assistance claim, the District Court erroneously misstated its own trial ruling on McRae's counsel's request to voir dire a witness about whether *Miranda* warnings had been given.

"Ground Three" of McRae's May 12, 2008 *pro se* § 2255 petition claimed ineffective assistance of counsel:

> The trial court denied counsel[']s attempt at suppression and stated that movant waived his rights to suppression by not filing the required pretrial motion. Movant did not want to waive his rights. Because trial counsel failed to file movant[']s suppression motion, statements that should have been excluded from trial were allowed into movant[']s trial.

JA 678. The District Court denied McRae's § 2255 petition as to this ground, stating:

25

> Petitioner argues that his counsel sought to have his statements excluded at trial but did not succeed because the Court determined that Petitioner had waived his rights to challenge the admissibility of the statements by failing to file a motion to suppress. This is incorrect. The record establishes that during trial, counsel challenged the admissibility of Petitioner's statements claiming that Petitioner "never made [the] statements at all." ([Trial Transcript] at 104). Government counsel noted that Petitioner had not filed a motion to suppress the statements; however, **in denying counsel's motion to exclude, the Court made no mention of the absence of a pre-trial motion to suppress.** (*Id.*)

JA 700 (emphasis added).

But as McRae describes in his 60(b) motion, the District Court's characterization of its prior rulings is not accurate. At trial, the District Court actually mentioned the failure to file a motion to suppress—*twice*.

The statements McRae sought to suppress allegedly were made by him to two separate customs agents in two separate interviews. First, McRae allegedly made incriminating statements to Customs Agent Blaine Crum. During Agent Crum's trial testimony, McRae's counsel sought to voir dire the agent because, among other reasons, there was "no Waiver of Rights form with regard[] to M[r.] McRae" related to his statements to Agent Crum. JA 127. The District Court denied McRae's counsel's request for voir dire. *Id.* The Government also inquired

whether McRae had filed a pretrial motion to suppress Agent Crum's testimony, and McRae's counsel explained that he had not. *Id.* During cross examination, Agent Crum admitted that he had not given McRae the standard form used by Customs Agents for *Miranda* waivers. JA 166.

The other statements allegedly were made to Supervisory Special Agent Robert Mensinger, who had interrogated McRae after McRae had been locked in an examination room. JA 569. At trial, McRae's counsel sought to voir dire Agent Mensinger to "get to the bottom of this whether or not any of [McRae's] rights were violated. In particular, we know that he was probably being detained at this time, but he was not given his *Miranda* rights." JA 570. The District Court then asked counsel whether he had "filed a motion to suppress that?" *Id*. After McRae's counsel responded in the negative, the Court denied McRae's request to voir dire Agent Mensinger. JA 570-71.

Agent Mensinger then testified that he informed McRae that he was under arrest but that he did not use a *Miranda* waiver form. JA 572. *See also* JA 577 (skipping, for example, the warning that anything McRae says may be used against him). After the close of the case but

27

before the verdict, the District Court reiterated why it denied McRae's

request to voir dire Agent Mensinger:

> And the Court denied that request after asking
> counsel whether a motion to suppress had been
> filed, and there had been no prefiled motion to
> suppress filed as is required by Rule 12(b)(c), and
> I take that – I find that that's a waiver of a
> suppression hearing, the failure to file a pretrial
> motion.

JA 655.

McRae's 60(b) motion contends that his § 2255 proceedings were

flawed because, as is clear from the trial transcript, both at the time of

testimony and after the close of evidence the District Court's decision to

allow Agent Mensinger to testify depended, at least in part, on whether

McRae's counsel had made a pretrial motion to suppress.[17]

---

[17] In an apparent attempt to shore-up its ruling, the District Court
later discussed, sua sponte, that "that appropriate warnings were
given, and that any statements made by the defendant were knowing
and voluntary" and the "proper foundation had been laid" for Agent
Mensinger's testimony. JA 656. This belated ruling does not speak
to trial counsel's performance under the Sixth Amendment, as
McRae ultimately was denied the opportunity to challenge the
agent's credibility via briefing, argument, or adverse testimony at a
suppression hearing. The fact that the District Court found the
agent's testimony to be credible the day after the jury *already heard*
that testimony and in the absence of a proper voir dire has no
bearing on the matter. Nor may this "alternative[]" ruling erase the
District Court's previous finding that counsel's failure to file a motion
to suppress "waived" McRae's right to voir dire the witness. At

McRae contends that the District Court's mistake may be attributable to inaccurate briefing by the Government. As McRae argues, "[t]he Government committed fraud and misrepresentation on the Court" in its brief opposing McRae's § 2255 petition by arguing that "the Court did not mention a pre-trial motion to suppress or deny the motion to exclude [McRae's custodial] statements on the basis that the argument had not been made pre-trial." JA 713-14 (referencing JA 750). The District Court's ruling denying McRae's § 2255 motion appears to have taken this incorrect assertion by the Government at face value, stating in its Order that:

> Government counsel noted that Petitioner had not filed a motion to suppress the statements; however, in denying counsel's motion to exclude, the Court made no mention of the absence of a pre-trial motion to suppress.[18]

---

bottom, the District Court's finding on collateral review that "in denying counsel's motion to exclude, the Court made no mention of the absence of a pre-trial motion to suppress" was always, and continues to be, incorrect as a matter of fact. JA 700.

[18] The District Court's statement tracks closely to the portion of the Government's supplemental brief opposing McRae's § 2255 motion: "Government counsel noted that Petitioner had not filed a pre-trial motion to suppress the statements, but the Court did not mention a pre-trial motion to suppress or deny the motion to exclude the statements on the basis that the argument had not been made pre-trial." 08-CV-219-RJC, Dkt #32 at 10.

29

JA 700.

McRae properly sought reconsideration under Rule 60(b) so that the Court could correct and clarify its § 2255 ruling.[19] But as with all of McRae's claims, the District Court viewed this fraud-on-the-court claim as a successive § 2255 claim under *Winestock*. This was erroneous. This Court in *Winestock* held that a fraud-on-the-court claim *is not* a successive § 2255 claim; instead, it is an archetypal 60(b) claim. *Winestock*, 340 F.3d at 207. As the Court explained, "an example of a

---

[19] Therefore, the District Court, after encouragement by the Government, mischaracterized *why* it denied McRae's request to suppress Agent Mensinger's testimony at trial. The "why" matters in this context: In order to establish ineffective assistance of counsel based on trial counsel's failure to move to suppress evidence, "establishing actual prejudice requires the petitioner to establish that the underlying claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Bone v. Polk*, 441 F. App'x 193, 198 (4th Cir. 2011) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). To determine whether McRae's trial counsel rendered ineffective assistance by failing to file a motion to suppress, the District Court first needed to correctly consider why it allowed Agent Mensinger's testimony in first place. If the District Court denied McRae's request to suppress because trial counsel waived McRae's ability to make a suppression motion, then McRae's ineffective assistance claim could be meritorious, as there has been no ruling by the District Court on the actual merits of McRae's suppression motion beyond it being waived. The District Court's ruling denying McRae's § 2255 motion did not make that assessment, however, because it simply misstated what happened at trial.

proper Rule 60(b) claim is an allegation that government agents perpetrated a fraud on the court during the collateral review process." *Id.* Accordingly, the District Court erred in failing to treat McRae's first claim under Rule 60(b).

## 2

McRae's *second, fourth*, and *fifth* claims similarly raise Rule 60(b) questions over the integrity of the § 2255 proceedings.

In his *second* claim, McRae argued that the District Court erred during the collateral-review process when it noted that McRae had admitted that he knew a co-conspirator, Ms. Atonia Bailey. JA 714. McRae maintained that he had not admitted that he knew Ms. Bailey, but rather lied to federal agents and denied knowing her. McRae paid for his falsehood when the Government emphasized during closing arguments that:

> McRae, the defendant, knew exactly what was happening in Charlotte, North Carolina. That's why he first said he didn't know a TNIA, know Atonia Bailey. That's why he told Agent Crum he hadn't seen Atonia Bailey for a few weeks. That's why he said he only hung out with Jamaican women. He wanted to put himself as far away. He wanted to have nothing to do with it …. The defendant does not want to accept responsibility for what he did to Atonia Bailey.

31

JA 631-32.

On collateral review, the District Court considered whether or not McRae suffered prejudice when his attorney failed to suppress certain evidence. JA 700-01. But the Court, McRae claimed, mistakenly began its analysis by stating that, rather than falsely claiming that he did not know Ms. Bailey, McRae "admitted that he knew Ms. Bailey." JA 701. This factual mistake caused a serious defect in the collateral review process by impacting the District Court's calculus of whether or not McRae suffered prejudice.

Thus, at trial, McRae's *second* claim goes, the Government used his lie against him; and on collateral review, the Court expunged the lie and used that against him, too.

Similarly, McRae's *fourth* contention is that the District Court made a mistake by misattributing statements made by the second of these interrogators, Agent Mensinger, to the first interrogator, Agent Crum. JA 719. Consequently, the District Court evaluated McRae's *Miranda* challenge under the mistaken belief that McRae was aware of his rights *well before he actually was*. Because the District Court's order did not take into full account that McRae "wasn't free to go

anywhere" during this extended period of pre-*Miranda* analysis, McRae argued that the District Court's factual mistake precluded McRae from receiving any meaningful review of his claim.  JA 166.

And in his *fifth* claim, McRae submits that the District Court erred in recounting the facts before analyzing his *Miranda* claim. Specifically, in making the rather extraordinary finding that McRae was not given "a formal explanation of his rights pursuant to *Miranda*, but Petitioner was at least informed of some of his rights consistent with *Miranda* warnings," the District Court noted that "Agent Mensinger explained to Petitioner … that a lawyer *would be* appointed to represent him if he could not retain one."  JA 701 (emphasis added). Not so.  Agent Mensinger testified that McRae "*may be* appointed an attorney down the road."  JA 577 (emphasis added).  Again, this factual misstatement precluded the District Court from conducting a proper analysis of McRae's claim.

None of these claims brings forth a new ground in favor of habeas relief.  Nor does any claim attack McRae's conviction or sentence. Instead, each sought merely to remedy "a defect in the collateral review

process"—McRae's claims were never considered in light of the facts as they actually happened. *Winestock*, 340 F.3d at 207.

Because these claims merely request that the District Court "correct all mistakes and errors to ensure Petition has had a fair 2255 proceeding," JA 722, McRae's *first*, *second*, *fourth*, and *fifth* claims should be treated as Rule 60(b) claims.

### 3

One of McRae's claims, however, is not like the others. The *third* claim states that the District Court failed to "evaluate and determine the prejudicial impact" a series of statements "had as a whole on the Jury's determination of the verdict." JA 715-16. Because this claim does not attack a defect in the collateral-review process—such as a factual misstatement that precluded a meaningful evaluation of a claim—but rather attacks "the federal court's previous resolution of a claim *on the merits*," McRae concedes that it was properly treated by the District Court as a successive § 2255 claim. *Gonzalez*, 545 U.S. at 352 (emphasis in original).

## B

In sum, the injury McRae seeks to remedy here is that the District Court, by misconstruing his entire Rule 60(b) filing as a successive § 2255 motion, deprived McRae of two things the law requires. First, when a petitioner makes a mixed petition such as McRae's, *Winestock* requires that he be given a choice of how the District Court handles it. 340 F.3d at 207. And second, by improperly dismissing McRae's latest claims as a successive § 2255 petition for lack of jurisdiction, the District Court has issued no ruling on the *merits* of McRae's 60(b) claims. Whether the basis for the Court's denial of McRae's request to suppress Agent Mensinger's testimony at trial, for instance, was due to a waiver by counsel or due to a substantive defect in the motion itself remains an open question. By dismissing on jurisdictional grounds McRae's entire filing, the District Court effectively denied McRae any meaningful review of his arguments. That decision was erroneous and should be remanded so that McRae's claims may be properly considered.

## III. McRae's "Mixed" Motion Must Be Considered by the District Court in the First Instance

Where a prisoner brings a mixed motion, "the district court should afford the applicant an opportunity to elect between deleting the

improper claims or having the entire motion treated as a successive application." *Winestock*, 340 F.3d at 207; *In re Williams*, 444 F.3d at 236. And where, as here, this Court determines that a district court failed to allow a petitioner to do so by dismissing the mixed motion for lack of jurisdiction, the "proper remedy" is to vacate and remand the district court's order to "allow [the petitioner] to make the required election" between deleting improper claims or treating the entire motion as second or successive. *Reid*, 369 F.3d at 375.

Even were a panel of this Court not bound by that rule, there are many reasons why prisoners should be required to proceed in the first instance before the district court. To start with, district courts are often well-versed in the facts of the case; not only, for instance, did McRae proceed before Judge Conrad on his 60(b) filing, but also for his trial and collateral-review proceedings.

Moreover, in cases (like this one) where a prisoner has alleged fraud or misrepresentation on the district court, proceedings before the district court are an essential step in determining whether, and to what extent, the government fell short in its mission to serve justice and to operate with candor to the tribunal.

Perhaps most importantly, "[d]ismissal of a *first* federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996). District courts possess the power via Rule 60(b) to wipe clean a defective first § 2255 proceeding, restoring a prisoner "his valuable right to one full round of federal habeas review," *Gonzalez*, 545 U.S. at 541 (Stevens, J., dissenting), without subjecting him to something Congress never envisioned as part of a *first* § 2255 proceeding: the heightened standards of 2253(c) or 2255(h).

Further, the screening mechanisms utilized in collateral-review proceedings were divvied up by Congress between the district courts (60(b) motions) and the courts of appeals (successive § 2255 petitions) for a good reason: federal courts are busy, and prisoners' appeals make them more so. Because Congress saw fit to allow prisoners to pursue true 60(b) relief before the district courts, it makes sense for district courts to undertake the inquiry whether the substance of a labeled 60(b) motion truly raises 60(b) claims.

In conclusion, had the District Court properly treated McRae's petition as mixed, it could have reached (after giving McRae the option to alter or abandon his successive § 2255 claim) the merits of McRae's true 60(b) claims, which McRae then could appeal to this Court following the issuance of a COA. But because the District Court "erred in holding that petitioner did not qualify even to seek Rule 60(b) relief," *Gonzalez*, 545 U.S. at 536, it never reached the merits of McRae's 60(b) claims. There is no reasoned decision, therefore, which this Court might consider in evaluating whether a COA should issue. The proper remedy in this circumstance is remand, so that the District Court may address McRae's 60(b) claims on the merits in the first instance.

For any and all of these reasons, the judgment of the District Court should be vacated, and this case remanded for further proceedings.[20]

## IV.  *En Banc* Review May Be Needed to Resolve Whether *Reid*'s "Incongruous" Approach Was Truly Intended by Congress Under §§ 2553(c) & 2555(h)

As described above, several panel decisions involving the issue

---

[20] Should the Court choose to exercise jurisdiction over the merits of McRae's claims, or prefer to determine whether McRae satisfies §§ 2253(c) or 2255(h) in the first instance, we respectfully request that the Court order supplemental briefing on those matters.

presented in this case conflict with *Gonzalez*, a decision of the United States Supreme Court. Moreover, this Court faces the question whether a *pro se* prisoner's filing constitutes one under 60(b) or § 2255 dozens of times a year, and the question is thus an exceptionally important one.[21] For either of these reasons, were the panel to find that the *Reid* methodology survived *Gonzalez*, *en banc* consideration would be necessary to secure and maintain uniformity of the Court's decisions. In preparation of that eventuality, we respectfully raise and preserve the following.

*    *    *

As described above, *Gonzalez* abrogated *Reid*.[22] But even if that were not so, there are plenty of other reasons why *Reid*'s COA analysis is unpersuasive. In view of the following, *Reid* should be overruled.

### A. *Reid* Is An Advisory Opinion

Federal courts have an independent obligation to assure themselves of jurisdiction. *Plains Commerce Bank v. Long Family*

---

[21] A Westlaw search for "'60(b)' /s 2255," for instance, returns more than ten cases from 2014, alone.

[22] And *Reid*'s progeny and antecedents, of course. In the interest of brevity, however, we take up only *Reid* rather than the many cases that follow *Reid*, *see, e.g.*, *Jones v. Braxton*, 392 F.3d 683 (4th Cir. 2004), herein.

*Land and Cattle Co.*, 554 U.S. 316, 324 (2008); *Leimbach v. Allen*, 976 F.2d 912, 915 (4th Cir. 1992). And a district court lacks jurisdiction to entertain a successive § 2255 petition without prior permission of a court of appeals. 28 U.S.C. § 2255(h). This Court's COA analysis in *Reid*, however, took place under the misapprehension that the district court correctly exercised jurisdiction over a 60(b) motion; this Court therefore exercised jurisdiction over "an appeal" pursuant to § 2553(c). This was error.

As explained above, this Court determined in *Reid* that the district court both lacked jurisdiction over Reid's successive habeas claim and erred in addressing it as a 60(b) motion. This Court's jurisdiction, therefore, could not have been premised on § 2253(c). Reid's filing, after all, was not in fact a 60(b) motion, but a camouflaged petition for permission to pursue successive § 2255 relief. In fact, the Court's jurisdiction was based on § 2255(h), which governs successive § 2255 petitions.

The treatment of a successive petition as *an appeal* would be to "suggest an entity not wielding judicial power" reviewed the petition below. *Hohn v. United States*, 524 U.S. 236, 245 (1998). *See also*

40

*Gonzalez*, 545 U.S. at 534 ("[A]bsence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties."); *c.f.*, *Jones v. Braxton*, 392 F.3d 683, 687 (4th Cir. 2004) (relying on *Reid* in finding that unauthorized application "constituted a 'proceeding'" before the district court). Because of the "constitutional questions which would surround such an arrangement," this Court must distance itself from "any such implication." *Hohn*, 524 U.S. at 246.

### B. *Reid* Undermined the Intent of Congress by Conflating the Requirements of §§ 2253(c) & 2255(h)

Similarly, contrary to this Court's rulings in *Reid*, "the filing of a second or successive [§ 2255] petition, or seeking authorization to file such a petition, is not an appeal." *Spitznas v. Boone*, 464 F.3d 1213, 1218 (10th Cir. 2006). Reid's entire statutory analysis, therefore, is suspect; by statute, prisoners *never* need a COA before advancing a petition for permission to file a successive § 2255 claim. *See* 28 U.S.C. § 2255(h); *see also Gonzalez*, 545 U.S. at 531 (acknowledging § 2244(b)(2)(B) "requires a more convincing factual showing than does Rule 60(b)"). There simply is no basis, therefore, on which a district court's erroneous interpretation of a *pro se* motion would subject a prisoner to a hurdle that Congress chose not to place before him.

41

60(b) movants and successive § 2255 petitioners already face separate screening mechanisms in the form of the COA and permission-to-appeal requirements. There is no need, therefore, for the Court to erect a further gatekeeping measure by evaluating whether mixed motions meet the COA requirement. *Spitznas*, 464 F.3d at 1218). After all, each 60(b) issue and § 2255 claim will face its own screening reckoning.

All this did not sit well with the *Reid* panel, which acknowledged that it "may" have "appear[ed] incongruous for us to grant a COA but then hold that the district court had no jurisdiction." 369 F.3d at 374 n.7. While the panel went on to accept that incongruity, it only did so under a misconstruction of the statutory scheme and without the benefit of the Supreme Court's holdings in *Gonzalez*. For instance, though the panel was correct to note that it "may not forego the COA inquiry altogether" in cases under § 2253(c), Reid's successive habeas claim was not governed by that provision, but instead by the relevant authorization statute, § 2244(b), which has no such COA requirement. Furthermore, the panel thought that such petitioners would have "no remedy" were it not to reach the COA issue; however, successive

42

petitioners may seek a remedy under the clear provisions of §§ 2244(b) or 2255(h). The Court, therefore, did not need to "accept some incongruity" to stay faithful to the statutory scheme; the incongruity was caused by its deviation from the statutory scheme.

If modification of the statutory formula were needed to address *pro se* 60(b) petitions, that change should emanate from Congress.

### C. *Reid* Upturned Decades of Case Law by Elevating the Form of a *Pro Se* Filing Over the Filing's Substance

As stated above, the proper treatment of a *pro se* filing depends on the nature of the claims presented in it. Rather than requiring a COA based on how the district court construed the motion, this Court should do so on the substance of the *pro se* prisoner's arguments. Despite the fact that the Court concluded that Reid's motion was in substance a second or successive habeas petition, it conducted its COA analysis as if the motion were in fact a true 60(b) filing. This approach, which elevates the district court's interpretation of a *pro se* filing over that filing's actual substance, is irreconcilable with decades of jurisprudence.

### REQUEST FOR ORAL ARGUMENT

McRae respectfully requests oral argument, as this appeal presents, among other things, an opportunity for this Court to address

in a published opinion the impact of *Gonzalez* on *Reid*, as well as the recurrent question of how best to evaluate whether a district court correctly construed a *pro se* prisoner's Rule 60(b) motion.

## CONCLUSION

For the above reasons, McRae respectfully submits that the judgment of the District Court should be vacated, and this case should be remanded for further proceedings.

Respectfully submitted,

May 2014

ROBERT L. LITTLEHALE
*Counsel of Record*
WILLIAM BLAISE WARREN
MOLISSA H. FARBER
DIANA V. VALDIVIA
NATHANIEL D. CULLERTON
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7319
rlittlehale@paulweiss.com

ALEXANDRA R. CLARK
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Petitioner*

45

## RULE 32(A)(7) COMPLIANCE

I prepared this brief using Fourteen-Point, proportionally spaced Century Schoolbook font. Exclusive of the Table of Contents, Table of Authorities, and Request for Oral Argument, the brief contains 9,475 words. I understand that a material misrepresentation may result in the Court's striking the brief and imposing sanctions. If this Honorable Court so directs, I am happy to provide an electronic version of the brief or copy of the word count screen-shot.

May 1, 2014

_____
Signature

## CERTIFICATE OF SERVICE

I hereby certify that on this first day of May, 2014, I filed with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit the required copies of this Brief, Joint Appendix, and Sealed Joint Appendix, and further certify that I caused to be mailed the required copies to:

AUSA Amy Elizabeth Ray
100 Otis Street, Room 233
Ashville, NC 28801

_____
Signature

**CERTIFICATE OF CONFIDENTIALITY**

Pursuant to Local Rule 10(d), I certify that the record on appeal contains the confidential Pre-Sentence Investigation Report, sealed by the District Court on March 29, 2011. I have marked four copies of this document "SEALED" on their cover pages, and enclosed them in envelopes marked "SEALED." I then submitted them for filing.

May 1, 2014

_____
Signature